UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARRYL L. RUGLESS,

                          Plaintiff,          **11-CV-6624**

               v.                             **DECISION
                                              and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Darryl L. Rugless ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits was not supported by substantial evidence and was contrary to applicable legal standards.

Plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)") and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, to remand the matter for reconsideration of the evidence. The Commissioner has cross-moved for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) on the grounds that the ALJ's was supported by substantial evidence and was legally correct.

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). For the reasons set forth below, this Court finds that the decision of the Commissioner was supported by substantial evidence in the record and was in accordance with the applicable legal standards.   Accordingly, the Commissioner's motion for judgment on the pleadings is hereby granted.

<u>**BACKGROUND**</u>

Plaintiff filed an application on September 11, 2009, for SSI claiming a disability since December 31, 2008, due to a back injury, panic attacks, and chronic pain.  At the time he filed his application, Plaintiff was thirty-nine years-old and had performed past work in factory assembly, as a teacher's aid, and as a truck driver/laborer.  Plaintiff's application was denied by the Social Security Administration ("the Administration") on November 24, 2009.  On December 2, 2009, Plaintiff filed a written request for a hearing.

Plaintiff appeared for the hearing, with counsel, before ALJ Jennifer Whang on May 10, 2011.   The ALJ appeared via videoconference.  Arthur Brown, a vocational expert, testified by phone at the hearing.  In a decision dated June 6, 2011, the ALJ determined that Plaintiff was not disabled within the meaning of

the Act.  The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on October 26, 2011.  On December 19, 2011, Plaintiff filed this action.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

Title 42 U.S.C., § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938); see also Moore v. Sec'y of Health and Human Services, 778 F.2d 127, 130 (2d Cir. 1985). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (stating that a reviewing court does not decide a benefits case de novo).

## II.  The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.

In her decision, the ALJ adhered to the five-step sequential analysis for evaluating Social Security disability benefits claims, which requires the ALJ to consider the following factors:

(1) whether the claimant is engaged in any substantial gainful work activity;

(2) if not, whether the claimant has a severe impairment that significantly limits his ability to work;

(3) whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; if so, claimant is considered disabled;

(4) if not, the ALJ determines whether the impairment prevents the claimant from performing past relevant work; if the claimant has the Residual Functional Capacity ("RFC")to do his past work, he is not disabled;

(5) even if the claimant's impairment or combination of impairments prevents him from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

See 20 C.F.R. §§ 404.1520 (a) (I)-(iv) and 416.920(a)(4)(I)-(iv).

At Step One of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings ("Tr.") at 51). At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and obesity. (Tr. at 51). The Plaintiff also had the following non-severe impairments: depression and anxiety. (Tr. at 51). At Step Three, the ALJ concluded that although severe, the

Plaintiff's impairments due to degenerative disc disease and obesity did not meet or equal, alone or in combination, the criteria listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. at 52).

At Step Four, the ALJ found that Plaintiff's past work as an assembly line label inspector, truck driver, teacher's aid, and fork lift operator all exceeded the exertional requirements of his Residual Functional Capacity, and therefore, Plaintiff could not perform his past relevant work. (Tr. at 55).  The ALJ concluded that Plaintiff, despite his impairments, retained the RFC to perform a significant range of light work, except that he would need to alternate positions between sitting or standing every 30 minutes.  Additionally, the ALJ found that Plaintiff could only occasionally use ramps and climb stairs, but he could never climb ladders, ropes, or scaffolds.  Plaintiff also could balance, stoop, kneel, crouch, or crawl only occasionally.  Finally, Plaintiff must avoid hazards, such as working around moving machinery and working at unprotected heights. (Tr. at 53).

At Step Five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that Plaintiff could perform, such as cashier and parking lot attendant. (Tr. at 55-56).  Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. at 57).

**A.   The ALJ's RFC finding is supported by substantial evidence in the record.**

Plaintiff claims that the ALJ's RFC finding is not supported by substantial evidence. After considering the medical evidence in the record and Plaintiff's testimony, the ALJ found that Plaintiff retained the RFC for light work as defined by 20 C.F.R. 416.967(b), including the ability to lift up to twenty pounds. However, the ALJ found that due to his impairments, "he requires a job that will allow him to alternate positions between sitting or standing every 30 minutes," (Tr. at 53), and has several other limitations regarding his ability to climb, balance, stoop, kneel, crawl, or crouch. The medical evidence, summarized below, provides substantial evidence to support the ALJ's RFC finding.

Plaintiff injured his back in 1997 while working as a truck driver for the City of Rochester, and he claims that his condition has deteriorated over time. Dr. Robert Wills—who is mistakenly referred to as Dr. Marzulo in the ALJ's decision-treated Plaintiff in June of 1998 following his initial back injury.  X-rays of Plaintiff's back showed that Plaintiff's lumbosacral spine was normal. Dr. Wills found no evidence of radiculopathy or neuropathy. Therefore, Dr. Wills concluded that Plaintiff's limitations only minimally affected his ability to work and that Plaintiff could return to light work involving no lifting of over thirty pounds, no bending, and no stooping. (Tr. at 233-34). The ALJ found this

opinion to be consistent with the record and accordingly, gave it great weight. (Tr. at 55).

Ten days before his alleged onset date, in December of 2008, Plaintiff checked into Unity Hospital for an allergic reaction. Dr. Osborne and Dr. Schenck noted that Plaintiff was in no acute distress and had normal ranges of motion in his extremities, which had normal muscle tone and no swelling or tenderness. (Tr. at 224). Additionally, Plaintiff was alert and fully oriented, had no focal neurological deficits, and had no motor or sensory deficit in any extremity.  Plaintiff was given prednisone and famotidine for the allergic reaction and was discharged. (Tr. at 224).

In November 2009, state disability analyst Dr. I. Blood opined in a physical RFC assessment that Plaintiff had no manipulative limitations and could occasionally lift and carry twenty pounds. Dr. Blood found that even with his chronic back pain, Plaintiff had an RFC for a full range of light work.  (Tr. at 257-262). Dr. Blood also performed an evaluation on Plaintiff's mental status and limitations and opined that Plaintiff did not have more than slight abnormalities of mental functions concerning restrictions in daily activities; difficulties in maintaining social interaction; and difficulties in maintaining concentration, persistence, and pace. She further opined that Plaintiff retained the functional capacity for concentration, persistence, and pace as required in the work setting. (Tr. at 257-262).

Dr. Karl Eurenius performed a consultative, internal medicine examination of Plaintiff on behalf of the Administration in November 2009. Dr. Eurenius found that although Plaintiff had some limitation of range of motion in his lumbar spine, he had no limitation in his cervical spine and no abnormality in his thoracic spine. He also had full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, ankles, and extremities. Dr. Eurenius found that Plaintiff's deep tendon reflexes were normal and equal in all four extremities, and he had no motor or sensory deficits. Plaintiff displayed no muscle atrophy, and his hand and finger dexterity were intact, with full grip strength in both hands. Dr. Eurenius opined that Plaintiff's prognosis was fair. (Tr. at 239-42).

In April 2010, Dr. Grattan, at the University of Rochester Medical Center, noted that Plaintiff was able to walk without difficulty and had full flexion and extension in his back, with some pain. (Tr. at 273-74). Dr. Grattan assessed chronic back pain, but he described the examination results as "relatively benign." (Tr. at 241). The x-rays of Plaintiff's lumbosacral spine were interpreted as unremarkable by Dr. Jacoby. (Tr. at 301).

In May 2010, an MRI of Plaintiff's lumbar spine showed no evidence of central canal or foraminal stenosis, and only mild stenosis with no signal abnormality within the nerve roots in the lower lumbar spine (Tr. at 278-79). There were well-maintained

vertebral body heights and intervertebral disc spaces from T12-L3. (Tr. at 278). In follow-up later that month, examination revealed positive straight-leg raising in the right leg, but nearly full strength and intact sensation. (Tr. at 280). On the left side, Plaintiff had full muscle strength, and straight-leg raising was negative.

In June 2010, Plaintiff had full strength in both legs, a normal range of motion in all four extremities, a steady gait, and the ability to heel and toe walk. (Tr. at 283). After examining Plaintiff and reviewing the results of the May 2010 MRI, Dr. Girgis found that the most likely the cause of his persistent axial back pain was multi-level facet arthropathy. Even with such a diagnosis, however, Dr. Girgis did not recommend surgery. Dr. Girgis instead advised Plaintiff to continue conservative care, which could include physical therapy, aquatherapy, chiropractic care, and pain management. (Tr. at 283).

As Defendant argues, at the time of Plaintiff's initial injury, the objective evidence, in the form of x-rays and electrodiagnostic testing, was normal. (Tr. at 230-32). Only ten days before his alleged onset date, the emergency room doctor assessed normal ranges of motion in all his extremities, normal muscle tone, and no tenderness. (Tr. at 224). Although Plaintiff claims his condition deteriorated over time, his doctors found minimal physical limitations at various times and only recommended

conservative treatment. For instance, as late as April 2010, Dr. Girgis described Plaintiff's examination findings as benign. Thus, reviewing the record as a whole, this Court finds that the ALJ's exertional RFC was supported by substantial evidence in the record.   With regard to Plaintiff's nonexertional limitations, consultative psychologist Dr. Kavitha Finnity examined Plaintiff in November 2009.   Dr. Finnity concluded that Plaintiff could follow and understand simple directions, perform simple and complex tasks, learn new tasks, and make appropriate decisions.   She also opined that Plaintiff would have difficulty with attention and concentration, relating with others, dealing with stress, and maintaining a regular schedule. (Tr. at 235-38).   The ALJ assigned great weight to Dr. Finnity's opinion regarding Plaintiff's abilities because they were consistent with the record.   However, the ALJ gave no weight to Dr. Finnity's opinion regarding Plaintiff's limitations because they contradicted Dr. Finnity's own analysis inasmuch as Dr. Finnity had concluded that Plaintiff's attention and concentration were intact and that Plaintiff had a good relationship with his family. (Tr. at 54).   In addition, after reviewing the record in 2009, Administration psychologist Dr. E. Kamin found that Plaintiff had no severe impairments stemming from anxiety disorders. (Tr. at 243).   State disability analyst Dr. Blood found, in 2009, that Plaintiff had the functional capacity to maintain concentration, persistence, and pace as

required in the work setting. (Tr. at 258). Reviewing the record as a whole, this Court finds that the ALJ's RFC with regard to Plaintiff's non-exertional limitations also was supported by substantial evidence in the record.

 B. **The ALJ did not err in evaluating the medical opinions in the record.**

Plaintiff argues that the ALJ's RFC determination, insofar as it is contrary to the opinion of treating physician Dr. Carroll that Plaintiff would be able to lift only up to ten pounds, would have trouble maintaining a consistent pace for up to twenty percent of the day, and would be likely to miss work up to four days per month, is inconsistent with the treating physician rule. Plaintiff also contends that the ALJ erroneously discounted the opinion of consultative examiner Dr. Eurenius that Plaintiff would have trouble lifting more than ten pounds, which was consistent with Dr. Carroll's opinion. The ALJ found that based on the totality of the evidence in the record, Plaintiff could occasionally lift up to twenty pounds. (Tr. at 55).

The treating physician rule generally gives deference to the physician who has provided the primary treatment for the patient. 20 C.F.R. § 404.1527(d)(2); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). Where the opinion of the treating physician is not consistent with other substantial evidence in the medical

record, it may be given less than controlling weight. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

Here, there is evidence in the record that is inconsistent with Dr. Carroll's opinion that Plaintiff has a limitation in lifting more than ten pounds, an ability to maintain attention or perform at a consistent pace, and impairments causing him to miss work up to four days in a month. To the contrary, substantial evidence supports the conclusion that Plaintiff retains the residual functional capacity to perform light work. For instance, in June of 1998, Dr. Wills opined that Plaintiff could return to light duty work provided it involved no lifting over thirty pounds. (Tr. at 234). In 2009, Dr. Blood determined that Plaintiff had the ability to "[o]ccasionally lift and/or carry" twenty pounds. (Tr. at 258). In June 2010, Dr. Girgis did not recommend surgical intervention and instead prescribed only a course of conservative care. (Tr. at 283). Notably, Dr. Carroll signed off on a treatment note with Dr. Martin in January 2011 stating that Plaintiff "needs PT and exercises to make pain manageable so that he can be employed again." (Tr. at 289). Although Drs. Carroll and Martin found that Plaintiff will "always have some pain, . . . with some limits, he should be able to work." (Id.).

With regard to Plaintiff's non-exertional limitations, in 2009, Dr. Kamin found that Plaintiff's mental impairments were not severe, (Tr. at 243), and Dr. Blood opined in 2009 that Plaintiff

retained the "functional capacity for concentration, persistance [sic] and pace required in the work setting" (Tr. at 198). Insofar as there was medical evidence in the record inconsistent with portions of Dr. Carroll's opinion, the ALJ was entitled to give those portions of the opinion less than controlling weight.   In sum, the Court finds that the ALJ properly decided the weight to be given to the medical opinions in the record.

C.   **The ALJ properly evaluated Plaintiff's credibility.**

Plaintiff argues that the ALJ erred in her evaluation of Plaintiff's credibility. The credibility of witnesses, including the claimant, is primarily determined by the ALJ and not the courts. Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982) (citations omitted).   The Social Security regulations provide that "in determining the credibility of the individual statements, the adjudicator must consider the entire record." SSR 96-7p.   This Court is compelled to uphold the ALJ's decision discounting a claimant's testimony if the finding is supported by substantial evidence. Aponte v. Secretary of Department of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment."   (Tr. at

54).  Plaintiff's RFC was based on all the evidence in the record, including Plaintiff's subjective complaints and the opinions of the examining and consulting physicians, all of which the ALJ actually considered. (Tr. at 54-55). Where an ALJ rejects a claimant's subjective complaints, the ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987); see also SSR 96-7p.

Here, the ALJ found that the objective evidence in the record did not indicate that Plaintiff's impairments were as severe as he alleged. (Tr. at 54). The ALJ pointed out three reasons for rejecting Plaintiff's testimony: Plaintiff continued to work from the time of the injury in 1997 until the alleged disability period, Plaintiff sought no treatment for his psychiatric symptoms, and the objective evidence in the record showed only minor injuries to his back. (Tr. at 54).  Accordingly, I find that the ALJ gave a clear and convincing rationale for not only the portion of Plaintiff's testimony that was rejected, but also for why the testimony was rejected. Based on the above, the Court finds that the totality of the evidence in the record supports the ALJ's assessment of Plaintiff's credibility.

D.  **The ALJ posed a complete hypothetical to the vocational expert.**

Plaintiff argues that the ALJ provided the vocational expert with an incomplete hypothetical that omitted some of Plaintiff's

limitations, which yielded job results that were inconsistent with his actual RFC. The Court finds that the hypothetical question posed to the vocational expert, accurately reflected Plaintiff's vocational profile and RFC. As discussed above, in determining Plaintiff's RFC, the ALJ properly evaluated the entire record and declined to give controlling weight to the medical opinions that were inconsistent with the record as a whole. The ALJ did not err in declining to include in her hypothetical the limitations as to which she found inadequate record support. <u>See</u>, <u>e.g.</u>, <u>Priel v. Astrue</u> No. 10-566-cv, 453 Fed. Appx. 84, 87 (2d Cir. 2011) (finding that the ALJ properly declined to include in his hypothetical question symptoms and limitations suggested by the treating physician that both conflicted with other substantial evidence in the record and were discounted in the RFC assessment). Because Plaintiff's RFC was supported by substantial evidence in the record, the hypothetical posed to the vocational expert was complete. Therefore, I conclude that the ALJ's decision at Step Five was supported by substantial evidence.

## **<u>CONCLUSION</u>**

For the reasons set forth above, I find that the ALJ's decision denying Plaintiff's claim for Supplemental Security Income is supported by substantial evidence in the record. Accordingly, Defendant's motion is granted and Plaintiff's motion for judgment

on the pleadings is denied.   Plaintiff's complaint is dismissed

with prejudice.

**SO ORDERED**.

                                          S/Michael A. Telesca

                              _____
                                          HONORABLE MICHAEL A. TELESCA
                                          United States District Judge

DATED:      November 20, 2012
            Rochester, New York